1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10

11   DANIEL REYES,                    )   No. CV 04-09132-SS
                                      )
12                  Plaintiff,        )
                                      )   MEMORANDUM DECISION AND ORDER
13             v.                     )
                                      )
14   JO ANNE B. BARNHART,             )
     Commissioner of the Social       )
15   Security Administration,         )
                                      )
16                  Defendant.        )
     ─────────────────────────────────)

17

18

19        Plaintiff Daniel Reyes ("Plaintiff") brings this action seeking to

20   overturn the decision of the Commissioner of the Social Security

21   Administration (hereinafter the "Commissioner" or the "Agency") denying

22   his application for Supplemental Security Income and Disability Income

23   Benefits.  Alternatively, he asks for a remand.  On December 14, 2004,

24   the parties consented, pursuant to 28 U.S.C. § 636(c), to the

25   jurisdiction of the undersigned United States Magistrate Judge.  This

26   matter is before the Court on the parties' Joint Stipulation ("JS")

27   filed on July 25, 2005.  For the reasons stated below, the decision of

28   the Commissioner is AFFIRMED.

**PROCEDURAL HISTORY**

Plaintiff previously filed an application for disability benefits on February 8, 1993.  It was denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge ("ALJ").  On July 17, 1995, ALJ Earl J. Waits issued a decision denying benefits, concluding that Plaintiff was capable of performing light work, with occasional postural limitations.[1]  (AR 21, 55-59).  Plaintiff filed an untimely request for review before the Appeals Council.  Although the Appeals Council gave Plaintiff an opportunity to explain the cause for his delay, Plaintiff provided no explanation for the late filing. Consequently, the Appeals Council dismissed Plaintiff's request for review on November 27, 1996.  (AR 21, 67-71).

On March 26, 2002, Plaintiff again filed an application for Supplemental Security Income under Title XVI, as well as for Disability Insurance Benefits under Title II of the Social Security Act.[2]  (AR 96-99, 293-96).  Plaintiff alleged that he became unable to work on February 6, 2002, due to severe back pain, a herniated disc, and unsuccessful back surgery.  (AR 96, 293).  The applications were denied initially and upon reconsideration.  (AR 297-307).  Plaintiff requested

---

[1]   "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).

[2]   Title XVI of the Social Security Act is codified at 42 U.S.C. §§ 1381-1385 ("Supplemental Security Income for Aged, Blind, and Disabled").  Title II of the Social Security Act is codified at 42 U.S.C. §§ 401-434 ("Federal Old-Age, Survivors, and Disability Insurance Benefits").

a hearing before an ALJ.   (AR 83).   On July 2, 2003, ALJ Cynthia A. Josserand conducted a hearing, at which Plaintiff appeared with counsel and testified.   A vocational expert also testified.   (AR 30-51).

The ALJ issued a decision denying benefits on August 25, 2003.   (AR 21-29).   Plaintiff sought review of this decision before the Appeals Council and submitted additional medical reports.   (AR 7-11, 15, 308-25).   On September 3, 2004, the Appeals Council issued a "Notice of Appeals Council Action," in which it stated that it considered the additional evidence and found no reason to review the ALJ's decision. Therefore, the Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner.   (AR 4-7).   Plaintiff commenced the instant action on November 4, 2004.

**FACTUAL BACKGROUND**

**A.   Plaintiff's Medical History**

Plaintiff was born in El Salvador on April 27, 1949 and was fifty-four years old at the time of the hearing.   (AR 34, 96).   In 1990, Plaintiff underwent back surgery after he hurt his back on the job while unloading an air conditioner from a truck the year before.   Although the first surgery helped to decrease the pain, he had a second surgery in 1992 for recurrent pain.   (AR 148, 168).   In 1999 and 2000, Plaintiff was involved in a couple of car accidents.   (AR 228, 232-33).   Following these incidents, his primary treating physician, Dr. Raul Bendana, referred him to Dr. Isaac Regev, a neurologist, for complaints of neck and low back pain.   (AR 228, 232-33).

3

1    After the first accident in October 1999, Dr. Regev diagnosed
2 Plaintiff with post traumatic cervical sprain with radiculitis, post
3 traumatic lumbosacral sprain with sciatica, and coccydynia.[3] (AR 236).
4 He recommended a lumbar MRI scan and diagnostic tests. (Id.).
5 Plaintiff also received epidural injections. (AR 229). Following the
6 second auto accident in September 2000, Dr. Regev diagnosed Plaintiff
7 with lumbosacral sprain with sciatica and recommended only conservative
8 physical therapy as well as anti-inflammatory medication. (AR 231).
9 There was no indication of any neurological deficits. (Id.). A MRI
10 scan of the lumbar spine conducted on November 27, 2000 revealed disc
11 bulges and spurs, but did not show significant deformity or displacement
12 of the nerve roots. (AR 239-40).

13

14    In 2002, Dr. Bendana referred Plaintiff to neurosurgeon Dr. Thomas
15 Chen for further evaluation of his back and neck pain. (AR 168-70).
16 On April 23, 2002, Dr. Chen examined Plaintiff and found full motor
17 power throughout, intact sensation with some reported numbness in the
18 L5 distribution, and only slightly diminished reflexes. (AR 169). Dr.
19 Chen recommended additional MRI scans of his lumbar and cervical spine.
20 (AR 169-70). A lumbar MRI in June 2002 revealed degenerative disc
21 disease, small disc protrusions, and severe bilateral facet hypertrophy.
22 (AR 144-45). A cervical MRI showed degenerative disc disease and small
23 disc protrusions without evidence of stenosis. (AR 146-47). On

24

25    [3] "Radiculitis" is a disorder of the spinal nerve roots.
26 Stedman's Medical Dictionary 1503 (27th ed. 2000). "Sciatica" refers to
pain in the lower back and hip radiating down the back of the thigh into
27 the leg. It is typically known to be caused by a herniated lumbar disk.
Id. at 1602. "Coccydynia" is defined as pain in the region of the
28 coccyx, a small bone at the end of the vertebral column. Id. at 374.

September 10, 2002, Dr. Chen saw Plaintiff for a follow-up consultation. (AR 166-67).   After reviewing the June 2002 MRI scans, Dr. Chen recommended a fusion procedure if Plaintiff's symptoms were to "progress to the point that he is unable to perform his normal activities." (AR 166).  Dr. Chen also recommended an epidural injection into the cervical spine to ease the pain.  (Id.).  Plaintiff did not receive the injection but instead told Dr. Chen he would "consider" it.  (Id.).

Dr. Chen examined Plaintiff again on October 29, 2002 and Plaintiff complained of worsening neck pain symptoms.   Dr. Chen recommended a posterior laminectomy in the neck.  (AR 165).  Plaintiff again stated that he would "contemplate his decision." (Id.).  On October 30, 2002, Dr. Chen completed a "Multiple Impairments Questionnaire." (AR 157-64). He opined that Plaintiff could only sit for zero to one hour total in an eight-hour day and would require ten-minute breaks every fifteen to thirty minutes.  Dr. Chen thought Plaintiff could also stand or walk for only zero to one hour in an eight-hour day and could lift and carry five to ten pounds only occasionally.  (AR 159-60).  On April 6, 2004, Dr. Chen completed another "Impairment Questionnaire" and indicated that Plaintiff could sit, stand, or walk for three hours in an eight-hour day.  He still thought that Plaintiff could only lift and carry up to ten pounds occasionally.[4]  (AR 308-14).

Dr. Bendana restricted Plaintiff from work for two months in May 2002 (AR 190) but also released Plaintiff to return to his work as a

---

[4]     This questionnaire was not before the ALJ at the time of the hearing decision.  Rather, Plaintiff submitted it to the Appeals Council in his request for review.  (AR 7, 10).

taxi cab driver "as he feels he is capable to do it." (AR 191). Dr. Bendana again restricted Plaintiff from work in October 2002, but this time for only one month. (AR 189).

On June 28, 2002, Dr. Kenneth W. Boddie, an orthopedic surgeon, examined Plaintiff at the Agency's request. (AR 148-55). Plaintiff complained that his back pain was aggravated upon sitting or standing for more than five minutes, walking more than one block, or lifting more than fifteen pounds. (AR 149). Upon examination, Dr. Boddie found no evidence of tenderness, spasm, muscle rigidity, or trigger points on the cervical spine. (AR 150). An examination of the back revealed tenderness in the lumbar spine and the sacroiliac joints. (AR 151). Dr. Boddie found sensory changes within the left lower extremity, no sensory changes within the right, no significant weakness or muscular wasting within the lower extremities, symmetrical reflexes, and evidence of irritation to the lower back only upon straight-leg raising. (AR 154). After the examination and a review of Plaintiff's MRI scans and medical records, Dr. Boddie found no significant impairments that would prevent Plaintiff's use of his upper or lower extremities. (AR 154-55). He concluded that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand or walk for six hours in an eight-hour day, and bend and crouch occasionally.[5] (AR 154). He also thought Plaintiff did not require any assistive device for walking. (AR 154).

\\

\\

---

[5]    Dr. Boddie, perhaps inadvertently, did not express any opinion with regard to Plaintiff's ability to sit.

6

On August 14, 2002, a State Agency physician reviewed the records and provided a residual functional capacity assessment.  The physician found that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; could sit, stand, and walk for six hours in an eight-hour day; and was unlimited in his ability to push and/or pull.  (AR 171-78).  The Agency physician noted that there had not been a material change in Plaintiff's condition since the date of the prior decision by ALJ Waits on July 17, 1995.[6]  (AR 176, 179-80).

### B.   **Plaintiff's Testimony**

At the hearing, Plaintiff testified that he attended high school through the twelfth grade in El Salvador and could read, speak, and write basic English.[7]  (AR 34-35).  His past work experience includes work as a parking lot attendant, a driver who unloaded and loaded trucks, and a taxi cab driver.  (AR 45).  In 1999 (after seeking disability benefits in 1993), Plaintiff earned nearly $9,419.00 as a

---

[6]    When the Commissioner denies a prior application for benefits, the principles of res judicata apply in any subsequent application. Chavez v. Bowen, 844 F.2d 691, 692-93 (9th Cir. 1988).  The claimant must prove "changed circumstances" in order to overcome the presumption of continuing nondisability arising from the first ALJ's findings of nondisability.  Id. at 693.  See also Acquiescence Ruling 97-4 ("Adjudicators must adopt [the prior ALJ's findings] from the final decision on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.").

[7]    By contrast, in his "Disability Report," Plaintiff indicated that he had only completed school through the second grade.  (AR 114). Plaintiff also indicated that he could not read, speak, or write more than his name in English.  (AR 107).

taxi cab driver.  (AR 38, 102).  While he did not recall the number of hours worked, he stated that "there was [sic] a lot of conventions" that year.  (AR 38).  Plaintiff asserted that he did not work full time in 2002, but he could not remember how many hours per month he worked.[8] (AR 39).  When questioned by the ALJ about his work hours for the period between January to July 2003, Plaintiff testified that he worked three hours a day for four to five days a week and earned approximately $200.00 a month.  (AR 38).

Plaintiff claimed that pain in his neck and lower back sometimes prevented him from working.  (AR 40-41).  He testified that he stopped working on June 10, 2003 due to a fainting spell and that he reported the incident to doctors.  (AR 39).  Plaintiff also stated that he still had a California driver's license and could drive a taxi cab were it not for the fainting.  (AR 39-40).  Plaintiff admitted that the June 10 incident was the first and only time he experienced a fainting spell. (AR 39).  While Plaintiff testified that he typically stayed in his apartment, he added that his daily activities included taking his son to the park and to school.  (AR 42-43).  Plaintiff also testified at the hearing that he could remain seated for one hour before needing to move around.  (AR 41).

\\

\\

\\

\\

_____

[8]   Plaintiff's earnings for 2002 totaled $7,216.00.  (AR 103). Measured against Plaintiff's 1999 earnings, this suggests that he worked a significant number of hours in 2002.  (AR 102-03).

1

2

### C.   The Vocational Expert's Testimony

3     Mr. Ron Hatakeyama testified at the hearing as a vocational expert.

4  The ALJ posed a hypothetical to Mr. Hatakeyama involving an individual

5  who (1) was approaching advanced age, (2) could communicate in English,

6  (3) has Plaintiff's past relevant work experience, (4) could perform

7  light work, and (5) would be limited to occasional bending and

8  crouching. (AR 45). Given these restrictions, Mr. Hatakeyama asserted

9  that such an individual could not perform Plaintiff's previous jobs,

10  which were characterized as either medium or heavy work.[9] (Id.).

11  However, that person could work in jobs involving light work including

12  positions as a photocopy machine operator or as a counter clerk in a

13  retail store. (AR 46).

14

15              **THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

16

17     To qualify for disability benefits, a claimant must demonstrate

18  a medically determinable physical or mental impairment that prevents him

19  from engaging in substantial gainful activity[10] and that is expected to

20  result in death or to last for a continuous period of at least twelve

21  months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing

22

23     [9]    The vocational expert stated initially that Plaintiff could
    perform his past work as a parking lot attendant, which was considered
24  to be light work. (AR 46). Upon further questioning by Plaintiff's
    attorney, however, he added that the job may be affected by an
25  individual who was limited to standing for no more than one hour. (AR
26  47).

27     [10]   Substantial gainful activity means work that involves doing
    significant and productive physical or mental duties and is done for pay
28  or profit. 20 C.F.R. §§ 404.1510, 416.910.

42 U.S.C. § 423(d)(1)(A)).   The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.   <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.   20 C.F.R. §§ 404.1520, 416.920.   The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?   If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe?   If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?   If so, the claimant is found disabled.   If not, proceed to step four.

(4)   Is the claimant capable of performing his past work?   If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?   If not, the claimant is found disabled.   If so, the claimant is found not disabled.

\\

\\

\\

10

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R. §§ 404.1520(b) - 404.1520(f)(1) & 416.920(b) - 416.920(f)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54 (citing Tackett). Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity,[11] age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

\\

---

[11]   Residual functional capacity is "what [one] can still do despite [his] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process discussed above. At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of his disability. (AR 23). Next, the ALJ observed that Plaintiff had the "severe" impairment of disorders of the back. (Id.). At the third step, however, the ALJ observed that Plaintiff's impairments did not meet or equal any of the impairments appearing in the "Listing of Impairments" set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.).

In the fourth step of her analysis, the ALJ weighed the medical evidence in determining Plaintiff's residual functional capacity ("RFC"). (AR 25-26). The ALJ concluded that Plaintiff retained the RFC for less than a full range of light work. (AR 26). Specifically, Plaintiff could (1) lift or carry twenty pounds occasionally and ten pounds frequently, (2) sit, stand, and walk for six hours in an eight-hour day, and (3) bend and crouch occasionally. (Id.).

After considering Plaintiff's functional limitations, and based on testimony by the vocational expert, the ALJ concluded that Plaintiff could not perform his past relevant work. (Id.). However, at the fifth step, the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy, including work as a photo copier or counter clerk. (AR 27). Consequently, the ALJ found that Plaintiff was not disabled at any time through the date of the decision. (Id.).

1

2

**STANDARD OF REVIEW**

3        Under 42 U.S.C. § 405(g), a district court may review the

4   Commissioner's decision to deny benefits.  The court may set aside the

5   Commissioner's decision when the ALJ's findings are based on legal error

6   or are not supported by substantial evidence in the record as a whole.

7   <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing

8   <u>Tackett</u>, 180 F.3d at 1097); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th

9   Cir. 1996) (citing <u>Fair v. Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1989)).

10

11        "Substantial evidence is more than a scintilla, but less than a

12   preponderance."  <u>Reddick</u>, 157 F.3d at 720 (citing <u>Jamerson v. Chater</u>,

13   112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which

14   a reasonable person might accept as adequate to support a conclusion."

15   <u>Id.</u> (citing <u>Jamerson</u>, 112 F.3d at 1066; <u>Smolen</u>, 80 F.3d at 1279).  To

16   determine whether substantial evidence supports a finding, the court

17   must "'consider the record as a whole, weighing both evidence that

18   supports and evidence that detracts from the [Commissioner's]

19   conclusion.'"  <u>Aukland</u>, 257 F.3d at 1035 (citing <u>Penny v. Sullivan</u>, 2

20   F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support

21   either affirming or reversing that conclusion, the court may not

22   substitute its judgment for that of the Commissioner.  <u>Reddick</u>, 157 F.3d

23   at 720-21 (citing <u>Flaten v. Sec'y</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

24   \\

25   \\

26   \\

27   \\

28   \\

**DISCUSSION**

Plaintiff contends that the ALJ's decision is erroneous. Specifically, he claims the ALJ erred in rejecting Dr. Chen's opinion in favor of that of the consultative examiner, Dr. Boddie. Plaintiff also claims that the ALJ erred in his assessment of Plaintiff's credibility. The Court disagrees with both of Plaintiff's contentions.

### A.    The ALJ Properly Evaluated Dr. Chen's Opinion

Plaintiff contends that Dr. Chen is a treating physician and that the ALJ improperly disregarded his opinion in favor of Dr. Boddie's opinion. (JS at 11). Furthermore, Plaintiff argues that Dr. Chen's sitting restriction should have been given controlling weight since it was not contradicted by an examining source. (JS at 11-13).

Generally, the opinions of treating physicians are entitled to special weight because the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). Although the treating physician's opinion is entitled to great deference, it is "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).

Contrary to Plaintiff's assertions, the ALJ may reject the opinion of a treating physician whether or not that opinion is contradicted.

14

1    _Magallanes_, 881 F.2d at 751.   Where the treating doctor's opinion is

2    uncontradicted, it may be rejected only for "clear and convincing"

3    reasons.   _Lester v. Chater_, 81 F.3d 821, 830 (9th Cir. 1995) (as

4    amended).   Where the treating physician's opinion is contradicted, the

5    ALJ may reject a treating physician's opinion in favor of a conflicting

6    opinion of an examining physician if the ALJ makes findings setting

7    forth specific, legitimate reasons for doing so that are based on

8    substantial evidence in the record.   _Lester_, 81 F.3d at 830-31;

9    _Magallanes_, 881 F.2d at 751.   In addition, the ALJ need not accept the

10   opinion of any physician, including a treating physician, if that

11   opinion is brief, conclusory, and inadequately supported by clinical

12   findings.   See _Matney v. Sullivan_, 981 F.2d 1016, 1019 (9th Cir. 1992).

13

14       Here, the ALJ rejected Dr. Chen's opinion for the following

15   reasons.   First, the ALJ found that Dr. Chen's opinion was not entitled

16   to the same weight normally given to a treating physician's opinion

17   because "Dr. Chen only twice examined [Plaintiff]."[12]   (AR 25).   It is

18   true that more weight is afforded to a treating source the longer the

19

20          [12]   The ALJ states in her decision that Dr. Chen examined

21   Plaintiff only twice.   (AR 25).   However, the record indicates that Dr.
     Chen actually saw Plaintiff on at least three occasions: April 23, 2002

22   (AR 169-70), September 10, 2002 (AR 166), and October 29, 2002 (AR 165).
     The Impairment Questionnaire dated April 6, 2004, indicates that Dr.

23   Chen saw Plaintiff on March 2, 2004 as well, but there are no treatment
     reports from that alleged visit.   (AR 308).

24

25       Regardless of whether Dr. Chen saw Plaintiff two or three or four
     times, it still stands that the ALJ was allowed to give less weight to

26   a physician who rarely saw the claimant.   Furthermore, except for the
     first visit on April 23, 2002, Dr. Chen's notes do not indicate that he

27   examined Plaintiff either physically or neurologically.   He seemed to
     have merely reviewed MRI scans and discussed treatment options with

28   Plaintiff.   (AR 165-66).

                                    15

source has treated a patient and the more times the patient has seen the

treating source.  20 C.F.R. § 404.1527(d)(2)(i).

Second, the ALJ rejected Dr. Chen's opinion "essentially preventing [Plaintiff] from all work" because after Dr. Chen assessed these "very restrictive limitations," Plaintiff went back to work as a taxi driver, apparently without difficulties.  (AR 25-26).  The ALJ pointed out that Plaintiff himself stated he could work "but for the fainting."  (AR 26). The record supports the ALJ's conclusion that Plaintiff's ability to work as a taxi driver, after Dr. Chen opined that Plaintiff could do less than sedentary work, "effectively negated Dr. Chen's entire assessment of [Plaintiff's] functional capacity."  (AR 25).  Dr. Chen's report dated October 30, 2002 stated that Plaintiff could only sit, stand, or walk for zero to one hour in an eight-hour day.[13]  (AR 159). However, at the hearing, Plaintiff attested to working as a taxi cab driver "[t]hree hours daily" for "[f]our days, and sometimes, five days" per week from January to June 2003.  (AR 38).  Comparing the amount Plaintiff earned after he returned to work with the amounts he earned in previous years before the alleged onset date, the ALJ logically concluded that Plaintiff must have retained a similar functioning level. (AR 26).  Thus, the ALJ was correct to assume that Plaintiff's return

\\

\\

---

[13]     Plaintiff contends that Dr. Chen limited Plaintiff to sitting for no more than three hours a day.  (JS at 12).  However, the "Impairment Questionnaire" that stated these restrictions was not submitted for the ALJ's consideration at the time of her decision.  See supra note 4 and accompanying text.  Thus, the Court refers instead to the functional limitations Dr. Chen set out in an earlier questionnaire. (AR 159).

to work suggested he retained the ability to work at the exertional level required for a taxi driver.[14]

Finally, the ALJ rejected Dr. Chen's opinion because Plaintiff's treatment records did not support Dr. Chen's "expansive restrictions." (AR 26).  A review of the treatment records confirm the ALJ's conclusion.  For example, Dr. Chen's examination of Plaintiff revealed full motor power throughout, intact sensation with some reported numbness in the L5 distribution, and only slightly diminished reflexes. (AR 169).  Dr. Chen had also noted in September 2002 that Plaintiff's cervical MRI was "not that impressive." (AR 166).  A month later, in October 2002, Dr. Chen assessed less than sedentary limitations and precluded Plaintiff from almost all reaching and grasping. (AR 157-65). Dr. Chen also recommended epidural injections and surgical options if Plaintiff's pain was unbearable, but Plaintiff chose not to undergo the treatment.  (AR 165-66).  Thus, Plaintiff's actual treatment and examination results were inconsistent with Dr. Chen's opinion.  See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (finding that the ALJ permissibly rejected the treating physician's opinion where the opinion was contradicted by or inconsistent with treatment reports).

---

[14]   Plaintiff contends that he was only able to work for short periods during this time and that the work activity did not amount to "substantial gainful activity." (JS at 16).  As Respondent points out, however, whether or not Plaintiff drove a taxi at "substantial gainful activity" levels is irrelevant to the ALJ's conclusion that Dr. Chen's restrictive limitations were inconsistent with Plaintiff's ability to perform the job at all.  (JS at 21 n.6).  In other words, Plaintiff's ability to work, even on a limited basis, contradicts Dr. Chen's opinion that Plaintiff could sit for only up to one hour a day and needed ten-minute breaks every fifteen to thirty minutes.  Therefore, this is a specific and legitimate reason to reject Dr. Chen's opinion.

Furthermore, treatment records of other treating physicians, such as Dr. Regev and Dr. Bendana also did not support Dr. Chen's limitations. Dr. Regev's examination revealed no neurological deficits and he recommended only conservative physical therapy and anti-inflammatory medication. (AR 231). The ALJ noted that Dr. Bendana had not prescribed "any narcotic based pain relieving medications." (AR 26). The ALJ remarked that such history suggested that Plaintiff's "condition may not be as debilitating as alleged." (Id.). The ALJ further observed that Plaintiff still retained a driver's license even after informing his doctors about his fainting incident, which suggested to him that Plaintiff's condition did not warrant driving restrictions. (AR 26). Moreover, Plaintiff's treating physician, Dr. Bendana, released Plaintiff in May 2002 to continue work as a taxi driver. (AR 26, 191).

These are specific and legitimate reasons to reject Dr. Chen's opinion. The record as a whole clearly demonstrates that Dr. Chen's opinion is largely inconsistent with the majority of Plaintiff's recorded medical history as well as his testimony. Remarkably, Plaintiff's own attorney admitted at the hearing that Plaintiff had worked as a taxi driver "over the last year and a half or so." (AR 34). Plaintiff also testified that he stopped working on June 10, 2003, a mere three weeks prior to the hearing date. (AR 39).

The ALJ was entitled to reject Dr. Chen's opinion in favor of the opinions offered by Dr. Boddie and the State Agency physician. (AR 26). Dr. Boddie, a consultative examiner, found that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand or walk for

18

six hours, and bend and crouch occasionally.  (AR 154).  He reached this conclusion after full physical and neurological examinations.  Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence.  <u>Andrews</u> <u>v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995).  "It is then solely the province of the ALJ to resolve the conflict."  <u>Id.</u>

Plaintiff concedes that Dr. Chen's opinion with respect to Plaintiff's ability to stand, walk, lift, and carry may be contradicted by Dr. Boddie's opinion.  (JS at 13).  However, he argues that Dr. Boddie did not contradict Dr. Chen's sitting restriction because Dr. Boddie did not provide any opinion regarding Plaintiff's ability to sit. Thus, Plaintiff contends that Dr. Chen's opinion regarding Plaintiff's ability to sit is uncontradicted and should be given controlling weight. (JS at 11-13).

Plaintiff is mistaken.  As noted above, the State Agency physician reviewed the medical records and opined that Plaintiff could sit for at least six hours in an eight-hour workday.  (AR 172).  Thus, Dr. Chen's opinion that Plaintiff could sit for only up to one hour a day is contradicted.  Although nonexamining physicians' opinions "with nothing more" cannot constitute substantial evidence, <u>see</u> <u>Andrews</u>, 53 F.3d at 1042, their opinions are not entitled to "little" or no weight.  <u>Id.</u> at 1041.  Instead, reports of a nonexamining physician "need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."  <u>Andrews</u>,

53 F.3d at 1041 (citing <u>Magallanes</u>, 881 F.2d at 752).  <u>See also</u> <u>Saelee</u> <u>v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996), <u>cert. denied</u>, 519 U.S. 1113, 117 S. Ct. 953, 136 L. Ed. 2d 840 (1997) ("We have held that the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings.").  Here, the State Agency physician's opinion was corroborated by Dr. Broddie's opinion, which was based on independent clinical findings.  The State Agency physician's opinion was also consistent with the treatment records of Dr. Bendana and Dr. Regev.  For example, Dr. Regev found only slightly decreased ranges of motion of the neck and back, no tenderness over the sciatic notches, essentially normal motor strength, intact sensation, and only slightly decreased reflexes.  (AR 229-30).

In sum, Plaintiff's nonaggressive treatment choices, recent work history, and the marked disparity between Dr. Chen's conclusion and the rest of the medical record all support the ALJ's decision to give less weight to Dr. Chen's opinion.  The ALJ provided specific and legitimate reasons for weighing the medical opinions as she did.  Moreover, the overwhelming consistency between the consultative examiner's evaluation, the Agency physician's opinion, and the rest of Plaintiff's medical record serves as substantial evidence in the record that supports the ALJ's conclusion.

\\

\\

\\

\\

\\

**B.   The ALJ Properly Rejected Plaintiff's Testimony as Not Credible**

Plaintiff contends that the ALJ erroneously assessed his credibility.  Plaintiff also complains that the ALJ discredited his testimony without providing sufficient record evidence to support her decision.  (JS at 25).  For the reasons stated below, the Court disagrees.

The ALJ may reject a plaintiff's testimony if he or she makes an explicit credibility finding that is "supported by a specific, cogent reason for the disbelief." <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990) (internal citations omitted).  Unless there is affirmative evidence showing that the plaintiff is malingering, the ALJ's reasons for rejecting the plaintiff's testimony must be "clear and convincing." <u>Lester</u>, 81 F.3d at 834.  Moreover, the ALJ may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence. <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346-47 (9th Cir. 1991).

Here, the ALJ rejected Plaintiff's testimony as "not entirely credible" for several reasons.  First, the ALJ pointed out that Plaintiff sat comfortably for twenty to twenty-five minutes at the hearing, despite his complaint to Dr. Boddie in 2002 that he could not sit for more than five minutes without feeling pain.  (AR 25, 149).  As noted by the ALJ, Plaintiff's report to Dr. Boddie was also inconsistent

\\

21

1    with Plaintiff's own testimony at the hearing that he could sit for one

2    hour before needing to move around.   (AR 25, 41).

3

4        Plaintiff argues that the ALJ improperly rejected his subjective

5    complaints solely based on her observations of Plaintiff at the hearing.

6    (JS at 25).   The ALJ may not rely on her own observations of the

7    claimant at the hearing as the sole reason for rejecting the claimant's

8    complaints.   Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001)

9    (citing Fair, 885 F.2d at 602).   Here, however, the ALJ did not cite her

10   observations of Plaintiff as the sole reason for rejecting his

11   testimony.   As discussed below, there were other clear and convincing

12   reasons the ALJ rejected Plaintiff's testimony.   See Verduzco v. Apfel,

13   188 F.3d 1087, 1090 (9th Cir. 1999) (finding an ALJ's reliance on

14   observations of the plaintiff at the hearing proper when the plaintiff's

15   symptoms were inconsistent with the medical evidence and other behavior

16   plaintiff exhibited at the hearing); Morgan, 169 F.3d at 600 ("[T]he

17   inclusion of the ALJ's personal observations does not render the

18   decision improper.") (citations omitted).

19

20       Furthermore, the ALJ only pointed out Plaintiff's ability to sit

21   at the hearing for twenty-five minutes to highlight Plaintiff's

22   inconsistent statement to Dr. Boddie that he could not sit for more than

23   five minutes without pain.   The ALJ is allowed to use ordinary

24   techniques of credibility evaluation, such as the claimant's reputation

25   for lying, prior inconsistent statements concerning the symptoms, and

26   other testimony by the claimant that appears less than candid to reject

27   a claimant's testimony.   Smolen, 80 F.3d at 1284.

28   \\

                                     22

Second, the ALJ found Plaintiff not credible because of Plaintiff's inconsistent and "evasive" statements when asked about his work history. The ALJ pointed out that Plaintiff asserted in his applications for benefits that he quit work in February 2002 due to his pain. (AR 96, 293). However, Plaintiff's earnings record revealed that he earned $7,216.00 in 2002. (AR 103). Plaintiff earned $9,419.00 in 1999, prior to his alleged February 2002 onset date of disability. (AR 102). Plaintiff also implied that 1999 was a busy year in terms of work with "a lot of conventions." (AR 38). Comparing the two earnings reports, the ALJ noted that Plaintiff must have worked a significant number of hours in 2002 and at an exertional level on par with his functional capacity in 1999, which was before his alleged onset date. (AR 26).

Third, the ALJ noted significant inconsistencies between Plaintiff's written assertions and his testimony regarding his education and his ability to speak and understand English. On his applications for benefits, Plaintiff stated that he only had a second grade education and could not read, speak, or write more than his name in English. (AR 107, 114). By contrast, Plaintiff testified at the hearing that he attended school through the twelfth grade and could read, understand, and speak basic English. (AR 34-35). The ALJ found that discrepancies on matters "so integral to determining disability suggest that much of what the claimant has alleged may be similarly unreliable." (AR 25). Generally speaking, so long as the ALJ produces specific findings supported by the record, he or she may refer to inconsistencies in a plaintiff's testimony as well as relevant character evidence in discrediting a plaintiff's allegations. Bunnell, 947 F.2d at 346; see also Verduzco, 188 F.3d at 1090 (rejecting the plaintiff's testimony

1   based on inconsistencies between his testimony, his actions, and the

2   medical evidence).

3

4        Finally, the ALJ noted that Plaintiff's failure to undergo the

5   recommended procedures such as epidural injections may indicate that

6   Plaintiff's condition may not be as debilitating as alleged.  (AR 26).

7   See, e.g., 20 C.F.R. §§ 1530(a) & (b), 416.930(a) & (b) (in order to get

8   benefits, claimant must follow treatment prescribed by physician if

9   treatment can restore ability to work, unless she has a good reason);

10  SSR 82-59 (stating that an individual who, without justifiable cause,

11  fails to follow prescribed treatment that may restore his or her ability

12  to work cannot be found disabled); Johnson v. Shalala, 60 F.3d 1428,

13  1434 (9th Cir. 1995) (explaining that the ALJ may use a plaintiff's

14  conservative or infrequent treatment to refute allegations of disabling

15  pain); Smolen, 80 F.3d at 1284 (explaining that a plaintiff's failure

16  to seek treatment or to follow a prescribed course of treatment may be

17  a reason for rejecting her testimony regarding the severity of her

18  pain).

19

20       These reasons are "clear and convincing" reasons that the ALJ gave

21  for discrediting Plaintiff's testimony and were supported by the record.

22  Consequently, the ALJ's credibility determination was proper and the

23  Court may not engage in second-guessing.   Thomas v. Barnhart, 278 F.3d

24  947, 959 (9th Cir. 2002).

25  \\

26  \\

27  \\

28  \\

1

**CONCLUSION**

2

3          Consistent with the foregoing, and pursuant to sentence four of 42

4    U.S.C. § 405(g),[15] IT IS ORDERED that judgment be entered AFFIRMING the

5    decision of the Commissioner and dismissing this action with prejudice.

6    IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this

7    Order and the Judgment on counsel for both parties.

8

9    DATED: September 9, 2005.

10

11                                        _____/s/_____
                                          SUZANNE H. SEGAL
12                                        UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26    _____

27          [15]    This sentence provides: "The [district] court shall have power
      to enter, upon the pleadings and transcript of the record, a judgment
28    affirming, modifying, or reversing the decision of the Commissioner of
      Social Security, with or without remanding the cause for a rehearing."